UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

JONATHAN WRIGHT

CRIMINAL ACTION

NO. 11-153-JJB

**RULING AND ORDER ON MOTION TO SUPPRESS**

Before the Court is a motion to suppress filed by defendant Jonathan Wright. (Doc. 25). The government opposes the motion. (Doc. 29). A suppression hearing was held on March 1, 2012. The parties filed post-hearing briefs (Docs. 36, 38, & 39) which narrowed the contested issues and submitted this matter.

I.

The hearing established the following facts. On or about February 10, 2011, a confidential informant contacted the Narcotics Division of the Baton Rouge Police Department around 3:20 p.m. That informant told police a drug transaction involving an unknown quantity of cocaine and a man named Erick Hawkins would occur in the driveway of a specific address on Merrydale Avenue in Baton Rouge at approximately 4:00 p.m. that afternoon. The source indicated Hawkins would deliver the cocaine while driving either a blue Suzuki or a blue Jaguar.

Acting on the tip, officers set up surveillance of the address beginning around 3:30 p.m. that afternoon. Officer Jeffrey Pittman, parked approximately 8-10 houses down from the transaction location, was the sole police eyewitness in the area, though several officers remained in the area ready to provide backup. At approximately 3:45 p.m., a blue Suzuki pulled into the residence in question and sat parked in the driveway. At around 3:50 p.m., a black Nissan Altima driven by defendant Jonathan Wright arrived at the same residence and pulled into the

1

driveway to the left of the Suzuki. A man later identified as Hawkins exited the blue Suzuki, walked over to the driver's side window of the Altima, and conducted what Officer Pittman described as "a hand-to-hand transaction" with the Altima driver consistent with "giving and receiving." The Altima thereafter backed out of the driveway and left.

Officer Pittman relayed what he saw to supporting officers in the area, who pulled the Altima over. A man later identified as Wright stopped the car in a travel lane in the middle of the street, exited the vehicle, and took off running. Sergeant Tim Browning, the officer who pulled Wright over, pursued him for 20-30 yards before witnessing him discard a bag of what was later determined to be cocaine. Sgt. Browning recovered the cocaine, and another officer later caught and arrested Wright. After giving him the standard *Miranda* warnings, Wright confessed he bought the cocaine from Hawkins and wished to cooperate.

On February 7, 2011, a federal grand jury returned an indictment charging Wright with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).[1]

II.

The sole issue Wright raises in his motion to suppress is whether officers had reasonable suspicion to stop the vehicle driven by Wright based on the facts then known to police following their surveillance of his encounter with Hawkins.

Investigatory stops, such as pulling over a vehicle, require reasonable suspicion to pass muster under the Fourth Amendment. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Reasonable suspicion exists when, under the totality of the circumstances, the determining officer has a particularized and objective basis for suspecting legal wrongdoing by the person stopped. *Id*. at 417-18.

---

[1] Hawkins has since pled guilty and awaits sentencing. (*See* Docs. 27-28).

Police may rely on confidential informants rather than their direct observation so long as the informant's information is reasonably corroborated by other matters within the officer's knowledge. *Jones v. United States*, 362 U.S. 257, 269 (1960), *overruled in part on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980) (discussing what may be relied upon for officer to form probable cause to justify warrantless arrest). Generally, an informant's veracity, reliability and basis of knowledge should be considered, and "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Illinois v. Gates*, 462 U.S. 213, 233 (1983) (citations omitted).

III.

On the facts presented, the Court concludes the officers' actions comported with the Fourth Amendment. Acting on a tip, the officers corroborated most of the details provided by the informant. Specifically, the tip included information on the location and time of the transaction, both of which perfectly dovetailed with actual events. The informant described the make and color of two potential cars Hawkins would be driving, and the blue Suzuki he actually used matched the description provided.

While the positioning of the surveillance did not permit officers to witness with razor-sharp clarity an unmistakable drug transaction, they witnessed enough to have reasonable suspicion that one occurred. Officer Pittman saw what he reasonably believed to be the party described by the informant (Hawkins in the blue Suzuki) pull into the location of the purported drug transaction near the anointed hour. Another car pulled up shortly thereafter, and a short exchange occurred which, in Pittman's judgment, "appeared to be some type of transaction" due

3

to the "movement of the arms" of Hawkins in apparent interaction with the driver of the Altima. Certainly, such conduct could reasonably be deemed consistent with a drug transaction.

Wright makes much ado about Pittman's failure to see money or contraband actually change hands, which he contends shows police lacked probable cause. But police only needed reasonable suspicion to pull Wright over, and his subsequent fleeing and discarding of a cocaine bag certainly gave them the probable cause needed to ultimately arrest him. Moreover, Officer Pittman set up his surveillance 8-10 houses away from the location in question. It is not inconceivable that, even assuming Pittman used binoculars, his line of vision might be blocked or the transaction participants might succeed in obscuring what they were doing. The Court finds nothing inherently troubling about Pittman's lack of dispositive visual proof.

Wright also contends that the unknown identity of the confidential source required officers to conduct a more intensive investigation to corroborate the details of the informant's tip before acting. While that is certainly true under *Florida v. J.L.*, 529 U.S. 266 (2000), it does not mean police must corroborate every last trivial detail before concluding the tip bears sufficient indicia of reliability to merit action. Of course, tips must be reasonably shown "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272 (citation omitted). But on that issue, Pittman's observations provided the required corroboration necessary to demonstrate the tip's reliability and, therefore, the propriety of the resulting investigatory stop of Wright's vehicle. Pittman testified that the interaction between Hawkins and Wright, in his experience, reasonably appeared to be a drug transaction. His experience told him that such transactions are normally quick exchanges, and while his vantage point did not afford him the ability to tell whether the transaction occurred through the driver's window of the Altima or necessitated opening the driver's door, he "observed what appeared to be movement

4

with the arms that was consistent with some type of giving and receiving." (Pittman Testimony, Doc. 35, at 17).

Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 417)). The likelihood of criminal activity needed to justify reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274 (citation omitted). Everything the informant told police either manifestly came to pass before Officer Pittman's eyes or could have been reasonably inferred to have occurred. Thus, based on the informant's tip and Officer Pittman's personal observations, informed by his experience in past drug investigations, he could reasonably have concluded the informant's tip was sufficiently reliable and thus conclude that criminal activity had indeed taken place right before his eyes. Regardless of whether police at the time they stopped Wright's vehicle had probable cause, they had the requisite level of reasonable suspicion required to justify their belief that Wright had just engaged in criminal wrongdoing. Of course, Wright's flight and obvious abandonment of a cocaine bag gave police all the suspicion they needed to justify the warrantless arrest that followed.

IV.

Accordingly, defendant Jonathan Wright's motion to suppress (Doc. 25) is DENIED.

Signed in Baton Rouge, Louisiana, on May 9, 2012.

‎ **JAMES J. BRADY, DISTRICT JUDGE**
 **MIDDLE DISTRICT OF LOUISIANA**